UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| THC-ORANGE COUNTY, LLC d/b/a KINDRED HOSPITAL – ONTARIO,<br><br>Plaintiff,<br><br>v.<br><br>REGENCE BLUESHIELD OF IDAHO, INC.; CAMBIA HEALTH SOLUTIONS, INC.; WINCO HOLDINGS, INC.; WINCO HOLDINGS, INC. EMPLOYEE BENEFIT PLAN; and DOES 3 through 20, inclusive,<br><br>Defendants. | Case No. 1:24-cv-00154-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Regence Blueshield of Idaho, Inc.'s and Cambia Health Solutions, Inc.'s partial motion to dismiss (Dkt. 24). The motion is joined by both WinCo Holdings, Inc. and WinCo Holdings, Inc Employee Benefit Plan (Dkt. 25). For the reasons set forth below, the Court will grant the motion.

## BACKGROUND

Kindred Hospital is a long-term acute care hospital in Ontario, California

that provides care to "the sickest of the sick" for extended periods of time. *Am.*
*Complaint* at ¶ 3, Dkt. 1. Kindred provided such care to a patient who was a
member of Winco's Employee Benefit Plan—an ERISA plan sponsored and
administered by Winco with Regence as its contract administrator. [1] *Id.* at ¶ 9.
Regence is an Idaho-based licensee of Blue Cross and Blue Shield and, as such.
participates in the Blue Card Program. *Id*. at ¶ 13. As a part of this program
Regence has agreements with Blue Cross Blue Shield plans in other parts of the
country which entitle it to access the contract rates negotiated by local plans with
local providers. *Id.* at ¶ 14. Relevant here, the Blue Card Program allows Regence
to access the rates Blue Shield of California negotiated with local providers,
including those negotiated with Kindred as set forth in the Provider Agreement. *Id.*
The defendants and Kindred are connected through three contracts: the ERISA
plan provided to the patient by the defendants, the Blue Card Program contract
between Regence and Blue Shield of California, and the Provider Agreement
between Blue Shield of California and Kindred.

     The events underlying Kindred's claims begin in March 2018 when Kindred

---

[1] Regence Blueshield of Idaho is an insurance provider and Cambia Health Solutions, Inc
is its parent company. *Am. Complaint* at ¶¶ 6, 7. The Court will refer to these defendants,
collectively, as Regence. *Id.* at ¶ 7.

**MEMORANDUM DECISION AND ORDER - 2**

began caring for a patient insured by Regence. *Id.* at ¶ 12. Kindred did not know

the patient was covered by Regence until July 2018, at which point it contacted

Regence to verify coverage. *Id.* at ¶ 14–16. During that call Kindred confirmed the

patient's coverage and sought authorization for the patient's care and Regence

refused the retroactive request for authorization. *Id.* at ¶ 16–18. Instead, Regence

instructed Kindred to submit its claims for the patient's care to Blue Shield of

California, at which point Regence would consider the medical necessity of care.

*Id.* at ¶ 19. The patient's coverage with Regence lapsed at the end of 2018 but was

reinstated in January 2019. *Id.* at ¶ 21–22. Kindred again requested authorization

and Regence again refused. *Id.* at ¶ 22. As instructed, Kindred submitted the claims

to Blue Shield of California. *Id.* Kindred alleges that all of the care provided was

medically necessary. *Id.*

Blue Shield of California, on behalf of defendants, initially paid Kindred

$554,143.00 for the care provided in 2018 and an additional $33,969.00 for

treatment provided in between January 1, 2019 and January 15, 2019. *Id.* at ¶ 23.

These amounts were a significant underpayment. *Id.* Kindred never received

payment for the care provided after January 16, 2019. *Id.* at ¶ 24. When Kindred

sought an explanation for the underpayment and nonpayment, Blue Shield of

California, on behalf of the defendants, informed Kindred that the care provided to

the patient during their stay at Kindred had been deemed not medically necessary. *Id.* Blue Shield of California later started recouping the funds previously paid to Kindred based on a "billing error." *Id.* at ¶ 25. Such recoupment efforts, more than 365 days after the payment, violate the terms of the Provider Agreement between Kindred and Blue Shield of California. *Id.* at ¶ 26.

Despite Kindred's efforts, it has not been paid the full amount due for its care of the patient. Accordingly, it filed this action alleging violations of California law. The defendants now move to dismiss Kindred's California state law claims—Counts One through Six of the Amended Complaint. Kindred opposes the motion.

## LEGAL STANDARD

A complaint must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when it pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Detailed factual allegations" are not

required, but a plaintiff must offer "more than…unadorned, the-defendant-unlawfully-harmed-me accusations." *Id.* (cleaned up). That is, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between the defendant and plaintiff's injury or damages. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

The Court must dismiss a cause of action if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "On a Rule 12(b)(6) motion to dismiss, the court accepts the facts alleged in the complaint as true, and dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *Yoshikawa v. Seguirant*, 41 F.4th 1109, 1114 (9th Cir. 2022) (citations, quotations, and alteration omitted).

## ANALYSIS

### A.    Judicial Notice and Consideration of Extrinsic Evidence

Regence requests the Court take judicial notice of the at-issue patient's health plan. *See* Dkt. 24-2. A court may take judicial notice of facts which are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes material "properly submitted as part of the complaint." *Lee v. Los Angeles*, 250 F.3d 668,

688 (9th Cir. 2001). Material submitted as part of the complaint may be considered

even where the documents are not physically attached to the complaint "if the

document['s] authenticity is not contested and the complaint necessarily relies on

[it]." *Id.* (cleaned up). Kindred does not question the authenticity of the document

and the document is "expressly mentioned in the amended complaint." *See Branch*

*v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Am. Complaint* at ¶¶ 4, 12, 14, Dkt. 1-

1. Accordingly, the Court will take judicial notice of the at-issue health plan.

### B.    ERISA Preemption

Regence argues that Kindred's state law claims are preempted by § 514(a) of

the Employee Retirement Income Security Act, or ERISA. *See* 29 U.S.C. §

1144(a). "ERISA contains one of the broadest preemption clauses ever enacted by

Congress." *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 818 (9th

Cir. 1992). Even "a garden variety state law cause of action, not particularly

troublesome in circumstances not involving employee benefits, may be preempted

where it is used to remedy exactly the type of illegal activity proscribed by

ERISA." *Tingey v. Pixley-Richards West, Inc.*, 953 F.2d 1124, 1130–31 (9th Cir.

1992). Section 514(a) of ERISA preempts "any and all State laws insofar as they

may now or hereafter relate to any employee benefit plan described in section

1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. §

1144(a). "A common law claim 'relates to' an ERISA plan 'if it has a connection with or reference to such a plan.'" *Oregon Teamster Employers Trust v. Hillsboro Garbage Disposal, Inc.*, 800 F.3d 1151, 1155 (9th Cir. 2015). The Court will address each prong of this analysis in turn.

### 1. "Connection with"

"A claim has an impermissible connection with an ERISA plan if it governs a central matter of plan administration or interferes with nationally uniform plan administration, or if it bears on an ERISA-regulated relationship." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 666 (9th Cir. 2019) (cleaned up). Kindred's breach of implied in fact contract and common count for services rendered claims both "govern[ ] a central matter of plan administration." *Id*.

The Ninth Circuit's recent decision in *Bristol SL Holdings, Inc. v. Cigna Health & Life Insurance* is instructive. 103 F.4th 597 (9th Cir. 2024). In *Bristol*, the successor in interest to a provider brought an action against a plan based on the plan's refusal to reimburse the provider for services rendered to its insured patients. *Id.* at 600. The plan denied the provider's claims based upon the provider's practice of "fee-forgiving," which was prohibited under the plan. *Id.* The provider argued that the plan was nonetheless obligated to reimburse the provider due to representations made by the plan during a preauthorization phone

call. *Id*. The Ninth Circuit concluded the claims interfered with a central matter of plan administration, reasoning:

> [I]f providers could use state contract law to bind insurers to their representations on verification and authorization calls regardless of plan rules on billing practices, benefits would be governed not by ERISA and the plan terms, but by innumerable phone calls and their variable treatment under state law. This is the type of discordant regime that "ERISA's comprehensive pre-emption of state law was meant to minimize."

*Id*. at 605 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 105 (1983)). The reasoning in *Bristol* applies with equal force to Kindred's claims. Both the breach of contract and common count claims rely upon representations made during a verification phone call to allege that Regence is liable for the cost of the care to the patient. *Am. Complaint* at ¶¶ 34–35, 59, Dkt. 1-1. These types of claims were expressly found by the Ninth Circuit to be preempted, and the Court must do the same here.

### 2. "Reference to"

A claim has "reference to" an ERISA plan when "the claim is premised on the existence of an ERISA plan," or "the existence of the plan is essential to the claim's survival." *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004). The Ninth Circuit has "explained that when a plaintiff's state law claim is '[i]n reality' a 'challenge [to] the administration of ERISA plan benefits,' it is preempted and may not proceed." *Bristol*, 103 F.4th at 602–03 (quoting *Greany*,

973 F.2d at 818). That is the case here.

Kindred's Amended Complaint artfully avoids relying on the ERISA plan in alleging its state law claims. Instead, it centers on the Blue Card Program and Provider Agreement. The unavoidable reality, however, is that all of Kindred's claims are premised on an ERISA plan. Regence's obligation to pay Kindred for any care provided to the patient is through a series of related contracts, including an ERISA plan. Absent the patient's ERISA plan, Regence would not have any obligation to pay for care rendered to this patient—regardless of the existence of the Blue Card program and the Provider Agreement. *See Wise v. Verizon Communications, Inc.*, 600 F.3d 1180, 1191 (9th Cir. 2010) ("Because [plaintiff] must allege the existence of an ERISA plan to state her claims under Washington law, the claims are preempted.").

The existence of an ERISA plan is necessary to each of Kindred's claims. For instance, its claim for declaratory relief requests the Court order Blue Card Program participants to pay Kindred and other providers consistent with terms of the Provider Agreement for care rendered to patients. *Am. Complaint* at ¶ 67, Dkt. 1-1. Any treatment pursuant to the Blue Card Program requires the existence of an ERISA plan. *See Ray Klein, Inc. v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*, 307 F. Supp. 3d 984, 989 (D. Alaska 2018).

**MEMORANDUM DECISION AND ORDER - 9**

Similarly, the conduct underlying Kindred's intentional and negligent interference claims, in other words the conduct that constitutes the interference, is Regence's administration of the patient's ERISA plan. Kindred's Amended Complaint alleges that Regence caused Blue Shield of California to underpay Kindred or not pay at all and to recoup the payments it did make. *Am. Complaint* at ¶¶ 24, 27, 30. Payment for services, denial of claims, and recoupment efforts are part of plan administration and necessarily require the Court "to interpret and analyze [the ERISA plan] to determine [Regence's] liability for [Kindred's] claims." *California Brain Institute v. United Healthcare Servs.*, No. 2:23-cv-0671-ORDw (RAOx), 2024 WL 2190983, at *3 (C.D. Cal. May 15, 2024). As such, these claims are premised on the existence of an ERISA plan.

Kindred argues that the mere existence of an ERISA plan does not necessarily preempt a claim where the claims are based on independent state law. Indeed, a claim does not make reference to an ERISA plan where the claim involves an area "quite remote from the areas with which ERISA is expressly concerned." *California Div. of Labor Standards Enf. v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316, 331 (1997). These claims include "run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan." *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S.

**MEMORANDUM DECISION AND ORDER - 10**

825, 833 (1988). Similarly, claims that on their face may be similar to those preempted by ERISA will not be preempted where no ERISA plan existed, or the patient was not covered by such a plan. *Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1069 (9th Cir. 2005) (collecting cases where no ERISA preemption was found including where there "was no ERISA plan," "plaintiff never became eligible to receive benefits under the plan," and the plaintiff "was not a participant in employer's ERISA health care plan.").[2] Kindred's claims do not fall into either category of claim.

Rather, at their core, Kindred's claims attempt "to secure plan-covered payments," which triggers preemption. *Bristol*, 103 F.4th at 603. Kindred's declaratory relief claim characterizes the present controversy as "regarding Defendants' liability to Kindred for payment for care and treatment provided to the Patient." *Am. Complaint* at ¶ 64, Dkt. 1-1. Kindred's UCL claim is similarly framed. It alleges violation of state and federal laws, but ultimately seeks

_____

[2] Notable among this set of cases is *The Meadows v. Employers Health Insurance*, 47 F.3d 1006 (9th Cir. 1995), which is cited by Kindred for the proposition that "ERISA does not preempt claims by a third party provider seeking damages. *Response* at 10, Dkt. 34. This overstates the holding in *The Meadows*. The Ninth Circuit held that patients "were not beneficiaries of any plan at the time Employers Health misrepresented the existing coverage." *The Meadows*, 47 F.3d at 1010; *accord Bristol v. SL Holdings, Inc. v. Cigna Health and Life Ins.*, 103 F.4th 597, 606 (9th Cir. 2024). Accordingly, *The Meadows* is inapposite to the scenario here where the patient was a beneficiary of an ERISA plan.

"restitution of the amounts that rightfully belong to Kindred and should have been paid to Kindred for the Patient's care." *Id.* at ¶ 77. In other words, payment of the benefits due under the patient's ERISA plan.[3] The same is certainly true of its breach of implied in fact contract and common count claims which allege Regence failed to pay Kindred for the services provided to the patient. *Id.* at ¶ 39, 61. Although Kindred frames liability as arising from only the Blue Card Program and the Provider Agreement, each of these claims seek to recover benefits due under the patient's ERISA plan. Accordingly, Counts One through Six are preempted by ERISA and are dismissed with prejudice.

## ORDER

**IT IS ORDERED that** Regence's Motion to Dismiss (Dkt. 24) is **GRANTED.** Counts One through Six are dismissed with prejudice.

---

[3] Kindred's allegations that the defendants violated other federal laws does not change the result that its UCL claim is preempted. No matter the underlying violation of law, the UCL claim makes clear that the remedy sought is payment of benefits. This is enough to trigger preemption.

DATED: August 30, 2024

B. Lynn Winmill
U.S. District Court Judge